UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL K. ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> SERRA CHEVROLET BUICK GMC OF NASHVILLE et al., <br><br> Defendants. | Case No. 3:21-cv-00670 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### REPORT AND RECOMMENDATION

Defendants Credit Acceptance Corporation (Credit Acceptance), Serra Chevrolet Buick GMC of Nashville (Serra), and Charles Hopkins have filed renewed motions to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (FAA), and to dismiss or, in the alternative, stay this action until arbitration is complete. (Doc. Nos. 40, 42.) Pro se Plaintiff Samuel K. Robinson has responded in opposition to the defendants' motions (Doc. Nos. 45, 46), and the defendants have filed replies (Doc. Nos. 47, 48). For the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motions in part, compel arbitration of Robinson's claims, and dismiss this action without prejudice.

I.     **Background**

   A.     **Factual Background**

Robinson states that, on June 19, 2020, his friend Willie Carter attempted to purchase a 2010 Chevrolet Impala from Serra in Madison, Tennessee. (Doc. Nos. 1, 12.) Credit Acceptance, which is based in Michigan, assessed Carter's credit and determined that he would need a cosigner

to finance the purchase. (Doc. No. 1.) Carter asked Robinson to cosign; Robinson agreed because Carter had recently been released from prison and Robinson wanted to help him "get[ ] his life back together[.]" (*Id.* at PageID# 3, ¶ 8.) Robinson and Carter met with Hopkins, a Serra sales representative, to purchase the vehicle. (Doc. Nos. 1, 12.) Robinson states that the paperwork he "signed to complete the financing process" designated him "as merely a co-signer." (Doc. No. 12, PageID# 204, ¶ 3.) He states that the total sale price under the contract "was approximately $10,000[.00] . . . with an estimated monthly payment of about $250.00 . . . ." (*Id.* at PageID# 205–06, ¶ 9.) Carter "render[ed] an initial down payment, but it was not the full amount," and Robinson, Carter, and Hopkins agreed that "Carter was supposed to return to the dealership the next Friday in order to complete his down payment[.]" (*Id.* at PageID# 204, ¶ 4.) Carter failed to return or complete the down payment, and Serra and Hopkins called Robinson several times in hopes of determining Carter's whereabouts. (Doc. No. 12.)

Credit Acceptance then began calling Robinson about the monthly payments.[1] (Doc. Nos. 1, 12.) Robinson asked why Credit Acceptance was calling him rather than Carter, and Credit Acceptance told Robinson "that [Robinson] was not the cosigner, but, in fact, the primary on the financial contract." (Doc. No. 12, PageID# 205, ¶ 7.) Robinson insisted that was incorrect and asked to speak to a manager. (Doc. No. 12.) A Credit Acceptance manager told Robinson that the contract Credit Acceptance received from Serra named Robinson as the primary purchaser of the vehicle. (*Id.*) Robinson went to Serra in person and spoke to Hopkins. (*Id.*) He requested and received a copy of the vehicle purchase contract and "personally observed" that his "name [had] been] falsified on a differing contract that was not disclosed to [him] . . . ." (*Id.* at PageID# 206,

---

[1] Credit Acceptance states, and Robinson does not dispute, that Serra assigned its interest in the vehicle purchase contract to Credit Acceptance. (Doc. No. 41-1.)

¶ 10.) Robinson states that the signatures on this contract "were in marker to mask tracing . . . and that the size of the document was shrunk before copying in order to make the discrepancies appear less apparent." (*Id.*) Robinson states that Hopkins "refused to recall the contract" and told Robinson "to file a lawsuit . . . ." (*Id.* at PageID# 205, ¶ 8.)

Robinson informed Credit Acceptance that the contract it received from Serra designating Robinson as a buyer was fraudulent and "requested an escalated review . . . ." (*Id.* at PageID# 206, ¶ 11.) Robinson states that a review board at Credit Acceptance determined that the contract was valid after consulting Serra. (Doc. No. 12.) He further states that Credit Acceptance "conducted another investigation . . . and, again, after conferring with Serra . . . , found no wrongdoing . . . ." (*Id.* at PageID# 206, ¶ 11.)

Credit Acceptance has filed a signed vehicle purchase contract that it affirms is a "true and authentic" version of the contract signed by Robinson, Carter, and Serra on June 19, 2020. (Doc. No. 41-1.) The arbitration clause included in that document provides:

> This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or service in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.
>
> \*   \*   \*
>
> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or Its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless

3

such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence): all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

\* \* \*

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration . . . .

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute . . . .

\* \* \*

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et Seq. ("FAA") . . . .

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

(*Id.* at PageID# 370.)

Credit Acceptance states that Robinson and Carter initialed the arbitration clause, indicating their acceptance of it, and also initialed a box on the first page of the contract regarding the arbitration clause that states:



(*Id.* at PageID# 366.)

Serra and Hopkins have filed a version of the vehicle purchase contract that contains an identical arbitration clause. (Doc. No. 6-5.)

### B. Procedural History

Robinson initiated this action by filing a complaint in the United States District Court for the Eastern District of Michigan. (Doc. No. 1.) Robinson's complaint against Serra, Credit Acceptance, and Hopkins brings claims under a variety of federal and state civil and criminal laws. (*Id.*) Robinson's federal causes of action include claims brought under the Truth in Lending Act, 15 U.S.C. §§ 1601–1667f, and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, as well as claims of civil rights violations under 42 U.S.C. § 1981 and 18 U.S.C. § 241 and wire fraud under 18 U.S.C. § 1343. (*Id.*) His state law claims include claims for common law fraud, usury under Tenn. Code Ann. § 47-14-117, and an illegal interest rate under Mich. Comp. Laws § 438.31. (*Id.*) Robinson attached a copy of what he asserts is a forged vehicle purchase contract to his complaint. (*Id.*) Robinson states that the original contract he signed identified him as a co-signer and provided for a total sale price of about $10,000.00 with monthly payments of about $250.00, while the contract he claims is falsified identifies him as a buyer and lists a total sale price of more than $15,000.00 and monthly payments of more than $300.00. (*Id.*) Robinson has not filed a copy of the original contract he maintains that he signed.

While this case was pending in the Eastern District of Michigan, Serra and Hopkins filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (6) or, in the alternative, to transfer venue to the Middle District of Tennessee under 28 U.S.C. § 1404(a). (Doc. No. 6.) Credit Acceptance filed a motion to compel arbitration under the FAA and dismiss or stay this case (Doc. No. 8), and Serra and Hopkins filed a notice concurring with Credit Acceptance's motion (Doc. No. 15). Robinson responded in opposition to the motion to

dismiss and the motion to compel arbitration (Doc. Nos. 9, 14) and argued that Credit Acceptance never served him with a copy of its motion to compel arbitration (Doc. No. 14).

The Eastern District of Michigan granted in part and denied in part Serra and Hopkins's motion to dismiss or transfer venue, finding that the court had federal question jurisdiction over Robinson's complaint, but that venue was not proper in Michigan. (Doc. No. 21.) The court therefore transferred the action to this Court under 28 U.S.C. § 1406(a). (*Id.*) In doing so, the Eastern District of Michigan noted that Credit Acceptance's motion to compel arbitration and dismiss or stay the case was fully briefed and would be transferred with the rest of the action. (*Id.*) The case was transferred to this Court the following day. (Doc. No. 22.)

This Court found that Credit Acceptance had not shown that it served its motion to compel arbitration on Robinson as required by Federal Rule of Civil Procedure 5 and the Eastern District of Michigan's local rules. (Doc. No. 39.) The Court therefore denied Credit Acceptance's motion without prejudice to refiling and properly serving the motion on Robinson. (Doc. Nos. 39, 44.)

Credit Acceptance and Serra and Hopkins filed renewed motions to compel arbitration and dismiss or stay this case (Doc. Nos. 40, 42) and certify that they served Robinson with copies of their motions and supporting documents by mail (Doc. Nos. 40–43). The defendants argue that there is no genuine dispute of material fact that the contract Robinson signed includes a mandatory arbitration clause that encompasses his claims in this action. (Doc. Nos. 41, 43.) They therefore ask the Court to compel arbitration and dismiss or stay this action until arbitration is complete. (Doc. Nos. 41, 43.) Robinson has responded in opposition to the defendants' motions to compel arbitration, arguing that the contract "is void on its face under the usury laws of . . . Tennessee and Michigan and cannot be enforced" and repeating his argument that he did not sign the version of the contract that is in evidence in this action. (Doc. No. 45, PageID# 383.) The defendants reply

that, because Robinson attacks the validity of the contract as a whole and not just the validity of the arbitration agreement itself, his arguments must be resolved by an arbitrator and not by this Court.[2] (Doc. Nos. 47, 48.)

II. **Legal Standard**

The FAA provides that written agreements to arbitrate disputes arising out of commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. This provision reflects "a 'liberal federal policy favoring arbitration[.]'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, arbitration remains "'a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Under the FAA, anyone aggrieved by another's alleged failure or refusal to arbitrate under a written arbitration agreement may petition a federal district court for an order directing the parties to proceed to arbitration in accordance with the agreement. 9 U.S.C. § 4. The overarching question

---

[2] Credit Acceptance further argues that Robinson's response in opposition to its motion to compel arbitration was untimely and that the Court should therefore deem its motion unopposed. (Doc. No. 48.) This argument fails to consider Federal Rule of Civil Procedure 6(d), which automatically extends filing deadlines triggered by service when service is made by mail. *See* Fed. R. Civ. P. 6(d). Credit Acceptance served its motion and supporting memorandum of law on Robinson by first class U.S. mail on September 12, 2022. (Doc. Nos. 40, 41.) Local Rule 7.01(a)(3) provides that "any party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion[.]" M.D. Tenn. R. 7.01(a)(3) (response). Federal Rule of Civil Procedure 6(d) provides that, where service is made by mail, "3 days are added after the [response] period would otherwise expire . . . ." Fed. R. Civ. P. 6(d). Robinson's response in opposition to Credit Acceptance's motion was therefore due no later than September 29, 2022. Robinson timely filed his response on September 27, 2022. (Doc. No. 45.)

for a court in resolving a motion to compel arbitration is "whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks:"

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* In making these determinations, courts must "examine the language of the contract in light of the strong federal policy in favor of arbitration" and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* Courts evaluating motions to compel arbitration "'treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party.'" *Green v. Mission Health Cmtys., LLC*, No. 3:20-cv-00439, 2020 WL 6702866, at *4 (M.D. Tenn. Nov. 13, 2020) (quoting *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014)).

Where, as here, a party challenges the validity of an arbitration agreement, the FAA instructs courts to apply state contract law to determine validity and enforceability. 9 U.S.C. § 2; *see also Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1271 (M.D. Tenn. 2020) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Courts distinguish between challenges to the validity of a contract as a whole, which are "matter[s] to be resolved by the arbitrators, not the federal courts[,]" and challenges to the validity of an arbitration agreement, which "federal court[s] may

8

adjudicate . . . ." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 452 (6th Cir. 2005) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)); *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (same). If the "court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 4). To place "the validity of the agreement [ ] 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit."[3] *Id.* (citation omitted).

### III. Analysis

Robinson's primary arguments in opposition to the defendants' motions to compel arbitration and dismiss or stay the case are that "the arbitration agreement and the contract as a

---

[3] In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

whole" are invalid and unenforceable because the contract's financing terms violate Tennessee and Michigan law and that he did not sign—and that the defendants therefore must have forged his signature on—the version of the contract that is in evidence here. (Doc. No. 45, PageID# 392.) The defendants argue that, because Robinson challenges the validity of the contract as a whole and not just the arbitration agreement, that challenge must be resolved in arbitration. (Doc. Nos. 43, 47, 48.)

The parties have filed identical versions of the vehicle purchase contract that contain the same arbitration clause. (Doc. Nos. 1, 6-5, 41-1.) A Credit Acceptance employee states by declaration that this document "is a true and authentic copy of the Retail Installment Contract ("RIC") dated June 19, 2020, between Samuel K. Robinson and Willie E. Carter . . . and Serra Chevrolet Buick GMC . . . for the purchase of a 2010 Chevrolet Impala." (Doc. No. 41-1, PageID# 363–64, ¶ 3.) The defendants have therefore carried their initial burden to show that Robinson entered into the arbitration agreement. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Robinson states by declaration that he co-signed paperwork to complete the financing for Carter's vehicle purchase but maintains that his signature is "falsified" on the version of the contract that the defendants filed in this action. (Doc. No. 12, PageID# 206, ¶ 10.) Robinson has not provided the version of the contract he maintains that he signed. He states by declaration, however, that the contract he signed identified him as a co-signer and listed a total sale price of about $10,000.00 with monthly payments of $250.00 (Doc. No. 12), while the version provided by the defendants identifies Robinson as one of two buyers and lists a total sale price of more than $15,000.00 and monthly payments of more than $300.00 (Doc. Nos. 1, 6-5, 41-1). These are the only differences Robinson identifies between the version of the contract in evidence and the

version Robinson argues that he signed. Robinson does not argue that there was not an arbitration clause in the agreement that he signed. Thus, Robinson offers no basis on which to find a genuine dispute of fact that he entered into an arbitration agreement when he signed a contract with Serra.

Robinson's arguments that the arbitration agreement is invalid are a subset of his argument that the contract filed by the defendants is invalid. The Sixth Circuit has repeatedly held that, "when claims [in opposition to a motion to compel arbitration] involve 'the validity of the contract as a whole' and not just the arbitration agreement, '[s]uch claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration.'" *Fazio*, 340 F.3d at 394 (second alteration in original) (quoting *Great Earth Cos.*, 288 F.3d at 892); *see also Glazer*, 394 F.3d at 452. Robinson has not responded to the defendants' arguments that the claims he raises in this action fall within the scope of the arbitration clause and do not include federal statutory claims that Congress designated as nonarbitrable. (Doc. Nos. 41, 43, 48.) Robinson also has not responded to the defendants' arguments that the case be dismissed with prejudice pending arbitration.

The defendants have met their burden to show no material dispute of fact that Robinson's challenge to the validity of the contract and arbitration clause is properly resolved by the arbitrator and that the claims Robinson raises in this action fall within the scope of the arbitration clause and are not otherwise exempt from arbitration. Because Robinson has not asked the Court to stay this action while that arbitration takes place or opposed the defendants' request that the case be dismissed while arbitration proceeds, the Court should dismiss the action without prejudice. *See, e.g.*, *Anderson*, 490 F. Supp. 3d at 1277 (compelling arbitration and dismissing action without prejudice because all of plaintiffs' claims were referred to arbitration); *Green*, 2020 WL 6702866, at *9 (compelling arbitration and dismissing action without prejudice because "plaintiff ha[d] not

requested a stay of this matter pending final resolution by the arbitrator, and because all of her claims [were] referred to arbitration").

IV.     **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motions to compel arbitration and dismiss or stay the case (Doc. Nos. 40, 42) be GRANTED IN PART and that the Court compel arbitration of Robinson's claims and dismiss this action without prejudice.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 5th day of June, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge